IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-534-FL

| | |
|---|---|
| WANSHIENDA O. TATUM, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-19, DE-22] pursuant to Fed. R. Civ. P. 12(c). Claimant Wanshienda O. Tatum ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on August 6, 2012, alleging disability beginning January 7, 2011. (R. 340–51). Both claims were denied initially and upon reconsideration. (R. 143–216). A hearing before the Administrative Law Judge ("ALJ") was held on July 14, 2014, at which Claimant, represented by counsel, appeared and

testified. (R. 104–42). The ALJ held a supplemental hearing on August 11, 2014, at which Claimant appeared with counsel and two medical experts and a vocational expert ("VE") appeared and testified. (R. 40–103). On January 26, 2015, the ALJ issued a decision denying Claimant's request for benefits. (R. 11–39). On April 21, 2016, the Appeals Council denied Claimant's request for review. (R. 1–5). Claimant then commenced the instant action, seeking judicial review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence

2

and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity ("SGA") since the alleged onset date.[1] (R. 16). Next, the ALJ determined Claimant had the severe impairments of a history of osteochondral defect of the medial femoral condyle and meniscal tear, both status post-surgical repair, depression, and a personality disorder, as well as the non-severe impairments of bilateral bunions and thrombosis. (R. 17–18). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18–20). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in her activities of daily living, and moderate limitations in social functioning and concentration, persistence, and pace with no episodes of decompensation. (R. 19–20).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a restricted range of light work[2] as follows:

> [S]tand and/or walk for up to a total of 4 hours in an 8-hour workday, and can sit for up to a total of 6 hours in an 8-hour workday. She can occasionally push and/or pull with her left lower extremity. She can occasionally climb ramps and stairs; can never

---

[1] The ALJ noted that Claimant had self-employment earnings of $15,389.00 in 2013 from providing child care services to two children, which would constitute SGA, but that he was holding in abeyance the issue of whether those earnings disqualified Claimant from benefits because the claims were disposed of at a later step in the analysis. (R. 17).

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

climb ladders, ropes, and scaffolds; can occasionally balance, frequently stoop, and can never kneel, crouch, and crawl. She can have frequent exposure to moving mechanical parts and high, exposed places (as defined by the Selected Characteristics of Occupations). She can have frequent exposure to extreme heat and extreme cold, (as defined in the Selected Characteristics of Occupations). She can understand, remember, and perform work tasks at GED Reasoning Level 03 (as defined in the Dictionary of Occupational Titles) and can perform productive work tasks for up to an average of 95 to 100% of an 8-hour workday, not including the typical morning, lunch, and afternoon breaks. She can have occasional contact with the general public that is inconsequential or superficial (i.e., no sustained conversations, e.g., ticket taker). She can perform work that involves routine tasks (i.e., no more than frequent changes in core work duties on a monthly basis). She can perform work that requires no more than frequent travel to different work sites.

(R. 18). In making this assessment, the ALJ found Claimant's statements about her limitations partially credible. (R. 27). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a teacher. (R. 30–31). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 31–32).

## V. DISCUSSION

### A. The ALJ's RFC Determination

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of

limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

### 1. The Opinion Evidence

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic

6

techniques and is not inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The weight afforded such opinions must be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

Claimant contends that the ALJ erred in weighing the opinion evidence by giving less than controlling weight to the opinion of Dr. Murray, Claimant's treating psychiatrist; significant weight to the opinion of Dr. Davis, a non-examining medical expert; and little weight to the opinion of Ms. McGaffagan, a consultative examiner. Pl.'s Mem. [DE-20] at 10–18. In response, the Commissioner argues that the ALJ properly evaluated the opinion evidence. Def.'s Mem. [DE-23]

at 13–20.

Dr. Murray began treating Claimant in January 2010, after she was kicked in the knee by one of her autistic students, and at that time Dr. Murray diagnosed her with PTSD and chronic pain. (R. 1142–43). In February 2010, Claimant reported being "under a lot of stress" and having nightmares, needing major surgery for her knee, and experiencing problems at work. (R. 1134–35). Dr. Murray recommended Claimant not return to work until the following school year after her knee was rehabilitated. (R. 1135). Claimant saw Dr. Murray in March, April, and May 2010, reporting stress from problems with her knee, marital and other family issues, and difficulty with her job (R. 1131–33), in August 2010, Dr. Murray noted Claimant's affect was anxious and sad (R. 1130), in September 2010, Claimant reported continued pain in her knee and daily crying spells (R. 1129), and in December 2010, Claimant reported continued problems with her job and difficulty sleeping (R. 1128). In January 2011, Dr. Murray changed Claimant's depression medication because it was not effective and she continued experiencing crying spells. (R. 1127). Dr. Murray also noted that Claimant was experiencing stress related to the school trying to fire her to avoid paying for her work-related injury and that her PTSD was school/job related. (R. 25, 1137). Claimant continued seeing Dr. Murray regularly from 2012 to 2014, and reported problems with her job (until she stopped working), knee pain, difficulty sleeping, depression, anxiety, and family issues. (R. 1107–26, 1332–61). The ALJ summarized these treatment records in the RFC assessment. (R. 25–26).

The ALJ evaluated four opinions from Dr. Murray. (R. 28). First, a treatment note from April 2, 2012 states "permanently disabled." (R. 1111). Second, an October 8, 2012 letter states that due to Claimant's "mental capacity it is not safe or beneficial for her to work on any occupation." (R. 1157). The ALJ gave these opinions no weight because they are opinions on an issue reserved

8

to the Commissioner, which are never entitled to controlling weight or special significance. (R. 28). Claimant does not challenge the weight afforded to these opinions.

The ALJ next evaluated two medical source statements provided by Dr. Murray, one undated (but appears to be from January 2013)[3] and the other provided on July 9, 2014. (R. 28–29, 1179–83, 1439–45). Claimant argues that Dr. Murray's medical source statements were entitled to controlling weight because Dr. Murray is a specialist and regularly treated Claimant since January 2010. Pl.'s Mem. [DE-20] at 15. The ALJ recognized that Dr. Murray is a psychiatrist who had been treating Claimant since 2010 (R. 22), but determined that Dr. Murray's opinions were lacking in supportability and consistency (R. 28–29). *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (listing non-exhaustive list of factors to consider in assessing medical opinions).

The ALJ stated that the undated statement consisted of "checking off various limitations blocks," that "other than underlining certain preprinted symptoms, no rationale or analysis was provided to support the limitations," and that the form reflected Dr. Murray's opinion that essentially Claimant was extremely limited in all functional activities and experienced continual decompensation. (R. 28). With respect to the July 2014 statement, the ALJ noted that various symptoms were circled with some general-symptom statements written in, there was no explanation regarding the finding that Claimant would miss more than three days a month of work, and the majority of functional limitations were assessed at the "extreme loss" level, which was defined as the complete loss of ability. *Id.* The ALJ assigned these opinions "little weight" because a claimant's RFC is an issue reserved to the Commissioner, the opinions were "check the block" forms

---

[3] The date field is blank, but Dr. Murray noted on the form that she had been treating Claimant for three years, since January 20, 2010, and there is a fax received date of January 30, 2013 on the bottom of each page. (R. 1179–83).

9

with "little to no meaningful rationale," the treatment notes were "unremarkable" and not supportive of extreme limitations, and the medical expert testified that an individual with such extreme limitations would have been hospitalized, which the record does not reflect and Claimant expressly denied at the supplemental hearing. (R. 29).

The ALJ appropriately considered the supportability of Dr. Murray's opinions, because "the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given." *Dunn v. Colvin*, 607 F. App'x 264, 268 (4th Cir. 2015); *see also Schaller v. Colvin*, No. 5:13-CV-334-D, 2014 WL 4537184, at *16 (E.D.N.C. Sept. 11, 2014) ("[S]ince the opinion is in the form of a questionnaire, the ALJ was entitled to assign it less weight than a fully explanatory and narrative opinion because such form opinions do not offer adequate explanation of their findings.") (citations omitted). This was not the ALJ's sole reason for discounting Dr. Murray's opinions, and the ALJ did not ignore the opinions due to their form but rather appropriately considered this as a factor in evaluating Dr. Murray's opinions.

The ALJ also appropriately considered the inconsistency between Dr. Murray's treatment notes and the extreme limitations noted in her opinions. While the treatment notes reflect that Claimant consistently reported depression, anxiety, and stress related to family and work issues, they do not evidence that she was essentially non-functional, as Dr. Murray concluded in her opinions, and in that respect are "unremarkable" as characterized by the ALJ. *See Craig*, 76 F.3d at 590 ("If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

The ALJ also relied on the opinion of the psychiatric medical expert, Dr. Davis, who testified at the supplemental hearing that an individual with limitations as extreme as Dr. Murray suggests

would be expected to have required inpatient treatment or hospitalization, which Claimant denied and the record does not support. (R. 18, 29, 58, 66–67). Claimant takes issue with the ALJ's reliance on Dr. Davis's opinion, noting his disagreement with Dr. Murray's PTSD diagnosis. Pl.'s Mem. [DE-20] at 16. However, Dr. Murray's own opinions are inconsistent as to the cause of Claimant's mental impairments, first listing bipolar disorder and later listing school-related PTSD as the primary diagnosis.[4] (R. 1179, 1439). Dr. Davis also explained that, based on the Diagnostic and Statistical Manual of Mental Disorders ("DSM"), he determined that Claimant's experience of being kicked by a student was not equivalent to the type of experience where a person could be killed, such as combat, a severe car wreck, or other extreme traumatic event, and did not meet the diagnostic criteria for PTSD. (R. 60). Dr. Davis testified that he reviewed the mental health portion of Claimant's records and considered the fact that Claimant suffered a severe impairment from being kicked in the knee in formulating his opinion. (R. 57–58, 60). Claimant does not assert that Dr. Davis's testimony was inconsistent with the DSM, and the ALJ may rely on the testimony of a medical expert that is consistent with the record as a whole. *See Johnson*, 434 F.3d at 656–57. The ALJ also noted that Claimant cared for two children other than her own for wages (constituting SGA) and found it was inconsistent for Claimant to allege "ongoing feelings of fear stemming from being kicked by a child, yet to simultaneously invite other children into [her] home." (R. 28). Claimant also takes issue with Dr. Davis's opinion that Claimant had an active social life because

---

[4] The ALJ found Claimant's personality disorder to be a severe impairment and considered the associated symptoms in formulating the RFC. There is nothing in the record to indicate Claimant's symptoms as a result of her personality disorder would be different than those from PTSD, and the alternating diagnoses between bipolar disorder and PTSD in Dr. Murray's opinions support this conclusion. Therefore, to the extent Claimant is asserting error based on the ALJ's failure at step two to characterize Claimant's PTSD as a severe impairment, any error is harmless. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (finding no reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation, provided the ALJ considers that impairment in subsequent steps).

she became pregnant, Pl.'s Mem. [DE-20] at 17–18, but the ALJ expressly rejected Dr. Davis's opinion regarding Claimant's social limitations (R. 29).

Finally, Claimant contends Dr. Murray's opinion is consistent with that of Patricia McGaffagan, MA, LPA, who conducted a psychological evaluation of Claimant on October 1, 2012.[5] (R. 1149–53); Pl.'s Mem. [DE-20] at 17. The ALJ summarized Ms. McGaffagan's report in detail. (R. 26–27). Ms. McGaffagan noted Claimant was "childlike and regressed," claiming not to know basic information such as her age, the day of the week, or the president (despite having earned a Master's Degree in Special Education), put forth minimal effort in answering questions, and appeared to have legitimate depression and anxiety but was exaggerating her symptoms. (R. 26, 1150). Ms. McGaffagan determined that Claimant's symptoms were consistent with major depressive disorder and panic disorder, but that it appeared there were motivational factors affecting her presentation, and it was not possible to determine the effect her motivation had on her presentation, although it was felt to be significant. (R. 26–27, 1152). Ms. McGaffagan concluded that Claimant was unable to understand, retain or follow instructions or sustain attention, would not relate well to others in her current state and her distress tolerance appeared impaired, and had the ability to read, write, and perform simple calculations (although she did not demonstrate those abilities during the evaluation). (R. 27, 1152).

The ALJ gave Ms. McGaffagan's opinion little weight because Claimant exhibited "poor effort during the examination" and "motivational issues were thought to play a significant part in her presentation." (R. 29). Claimant points out that Ms. McGaffagan did not suggest Claimant was malingering and suggests the ALJ should not have discounted the opinion. Pl.'s Mem. [DE-20] at

---

[5] Ms. McGaffagan's report was also signed by Dr. Burgess, a licensed psychologist. (R. 1153).

17. However, the ALJ had already determined Claimant's depression and personality disorders were severe impairments and was considering Ms. McGaggagan's opinion in the context of evaluating the RFC, which reflects the extent to which these impairments result in functional limitations that affect Claimant's work-related abilities. Claimant's poor effort and exaggeration of her symptoms made Ms. McGaffagan's opinion less useful in assessing the extent to which Claimant's mental impairments affected her abilities. Accordingly, the ALJ did not err in affording this opinion little weight.

The ALJ explained the weight assigned to the medical opinions, citing record evidence in support, and the court may not re-weigh the opinion evidence and substitute its own conclusions for those of the Commissioner. *See Dunn*, 607 F. App'x at 267 ("An ALJ's determination as to the weight assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(d) (1998)."); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Accordingly, the ALJ's consideration of the medical opinion evidence provides no basis for remand.

### 2. Maintaining Concentration, Persistence, or Pace

The ALJ may utilize a VE at steps four and five "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). In order for a VE's opinion to be "relevant or helpful," it must be given in response to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that are supported by the record. *Id.*; *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (per curiam) (holding the ALJ's hypothetical question

"adequately contemplated all of [claimant's] impairments and resulting limitations" as evidenced by the record). In other words, the hypothetical to the VE must be based on an accurate RFC. *See Massey v. Colvin*, No. 113-CV-965, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015) ("VE testimony as to the existence of jobs will constitute substantial evidence in support of the ALJ's decision if it is in response to a hypothetical question based on an accurate RFC.") (citing *Walker*, 889 F.2d at 50–51).

In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). The court explained that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court also indicated that there could be instances where a limitation in concentration, persistence, or pace does not affect the Claimant's ability to work and would be appropriately excluded from the RFC. *Id.* In such circumstances, however, an explanation from the ALJ is required. *Id.*

Here, in assessing Claimant's ability to maintain "concentration, persistence, or pace," the ALJ found Claimant demonstrated moderate difficulties. (R. 20). As a result, in the RFC the ALJ imposed the following relevant restrictions: understand, remember, and perform work tasks at GED Reasoning Level 03 (as defined in the Dictionary of Occupational Titles); perform productive work tasks for up to an average of 95 to 100% of an 8-hour workday, not including the typical morning, lunch, and afternoon breaks; occasional, inconsequential contact with the public; and perform work

14

that involves routine tasks (i.e., no more than frequent changes in core work duties on a monthly basis). (R. 21). The ALJ explained that Claimant's moderate limitations in maintaining concentration, persistence, and pace informed the task complexity and productivity limitations.

Claimant first contends that the ALJ erred by not including in the hypothetical to the VE the restriction that she perform productive work tasks for up to an average of 95 to 100% of an 8-hour workday, excluding the typical breaks. Pl.'s Mem. [DE-20] at 19. The ALJ did not include that specific restriction in the hypothetical to the VE (R. 92–99); however, the omission is harmless error because the VE testified that a person must be able to perform at no less than 90% productivity during an 8-hour workday to engage in competitive work. (R. 99). Therefore, the ability to perform tasks for at least 95% of an 8-hour workday would not preclude competitive work.

Claimant also contends there is no substantial evidence to support a finding that she can perform work tasks for up to an average of 95 to 100% of an 8-hour workday, because no medical source of record used that language. Pl.'s Mem. [DE-20] at 19. It is the ALJ's duty to formulate the RFC after considering the entirety of the evidence. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). In doing so the ALJ must consider opinions of medical sources, but there is no requirement that the RFC mirror the language of a medical source; rather, the RFC must be supported by substantial evidence. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (opinions from medical sources on the issue of a claimant's RFC are considered, but the final responsibility for deciding the issue is reserved to the Commissioner); *see also Divins v. Astrue*, No. 3:11CV00033, 2012 WL 220246, at *11 (S.D. Ohio Jan. 25, 2012) ("There is no requirement that the ALJ adopt the precise language offered by a medical source, as long as the ALJ's conclusion as to a claimant's RFC is supported by substantial evidence."), *adopted by* 2012 WL 639518 (Feb. 28, 2012). Thus, Claimant is incorrect

15

that the ALJ's finding Claimant can perform work tasks for up to an average of 95 to 100% of an 8-hour workday is not supported by substantial evidence simply because no medical source of record used that language.

Next, Claimant contends that the limitations to work tasks at GED Reasoning Level 03, occasional contact with the public, and no more than frequent changes in core work duties on a monthly basis do not account for her moderate limitation in concentration, persistence, and pace. Pl.'s Mem. [DE-20] at 19–22. The ALJ did not simply limit Claimant to simple, routine, repetitive tasks, as was the case in *Mascio*, but also imposed limitations on Claimant's contact with the public and frequency in changes of work duties. (R. 21). The ALJ explained that these task complexity and productivity limitations were imposed to account for Claimant's moderate limitations in maintaining concentration, persistence, and pace (R. 30), and the court has previously determined that such limitations were adequate to address a claimant's reduced ability to sustain focus and concentration. *See Pridgen v. Colvin*, No. 4:15-CV-00095-F, 2016 WL 4047058, at *7 (E.D.N.C. June 30, 2016) (citing *Reiser v. Colvin*, No. 5:14-CV-850-FL, 2016 WL 1183092, at *8 (E.D.N.C. Mar. 28, 2016)), *adopted by* 2016 WL 4046763 (July 27, 2016).

The ALJ discussed at length Claimant's testimony, the treatment records, and the opinion evidence regarding Claimant's mental impairments. (R. 18–20, 22, 25–30). The ALJ declined to adopt a finding that Claimant was markedly limited in maintaining concentration, persistence, and pace, because he found Claimant less than credible based on the fact she was providing care for two children that were not her own (generating earnings at SGA), which was inconsistent with someone who claimed to be essentially non-functional; Ms. McGaffagan noted that Claimant appeared to be exaggerating her symptoms and gave poor effort, diminishing the usefulness of her opinion in

16

assessing the extent of Claimant's mental impairments on her functional ability; and Dr. Murray's treatment notes indicated Claimant suffered from symptoms of depression and personality disorder, but were not indicative of the extreme limitations in the medical source statements, as evidenced by Claimant's lack of inpatient treatment or hospitalization. (R. 20, 25–30). Accordingly, the ALJ appropriately considered Claimant's ability to sustain concentration, persistence, or pace and sufficiently accounted for her moderate limitation in this area in the RFC determination and in the hypothetical to the VE, as required by *Mascio*.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-19] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-22] be ALLOWED, and the final decision of the Commissioner be affirmed.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 28, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation**

by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, this the 14 day of August 2017.

Robert B. Jones, Jr.
United States Magistrate Judge