IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-534-FL

| | |
|---|---|
| WASHIENDA O. TATUM, | ) |
|         Plaintiff, | ) |
| v. | )    ORDER |
| NANCY A. BERRYHILL, | ) |
|   Acting Commissioner of Social Security, | ) |
|         Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings. (DE 19, 22). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr., entered memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's decision. Plaintiff timely filed objections to the M&R, and the issues raised are ripe for ruling. For the reasons that follow, the court rejects the M&R, grants plaintiff's motion, denies defendant's motion, and remands for further proceedings.

## BACKGROUND

On August 6, 2012, plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income, alleging disability beginning January 7, 2011. The applications were denied initially and upon reconsideration. A hearing was held on on July 14, 2014, and supplemental hearing on August 11, 2014, before an administrative law judge ("ALJ"). Thereafter, the ALJ denied plaintiff's claims by decision dated January 26, 2015. The Appeals Council denied plaintiff's request for review on April 21, 2016, leaving the

ALJ's decision as defendant's final decision. Plaintiff then filed a complaint in this court on June 28, 2016, seeking review of defendant's decision.

## COURT'S DISCUSSION

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence [is] . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion," Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Id. (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

To assist it in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 7, 2011. At step two, the ALJ found that plaintiff had the following severe impairments: a history of osteochondral defect of the medial femoral condyle and meniscal tear, both status postsurgical repair; depression; and a personality disorder. However, at step three, the ALJ further determined that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listings in the regulations.

Before proceeding to step four, the ALJ determined that plaintiff has the following residual functional capacity ("RFC"):

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she can stand and/or walk for up to a total of 4 hours in an 8-hour workday, and can sit for up to a total of 6 hours in an 8-hour workday. She can occasionally push and/or pull with her left lower extremity. She can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; can occasionally balance, frequently stoop, and can never kneel, crouch, and crawl. She can have frequent exposure to moving mechanical parts and high, exposed places (as defined by the Selected Characteristics of Occupations). She can have frequent exposure to extreme heat and extreme cold, (as defined in the Selected Characteristics of Occupations). She can understand, remember, and perform work tasks at GED Reasoning Level 03 (as defined in the Dictionary of Occupational Titles) and can perform productive work tasks for up to an average of 95 to 100% of an 8-hour workday, not including the typical morning, lunch, and afternoon breaks. She can have occasional contact with the general public that is inconsequential or superficial (i.e., no sustained conversations, e.g., ticket taker). She can perform work that involves routine tasks (i.e., no more than frequent changes in core work duties on a monthly basis). She can perform work that requires no more than frequent travel to different work sites.[2]

(Tr. 21).¹ In making this assessment, the ALJ found plaintiff's statements about her limitations partly credible. At step four, the ALJ concluded plaintiff is unable to perform past relevant work. At step five, the ALJ determined that there are other jobs that exist in significant numbers in the national economy that plaintiff can perform. Thus, the ALJ concluded that plaintiff is not disabled under the terms of the Social Security Act.

B.    Analysis

Plaintiff argues that the ALJ erred in assessing the weight given to the opinion of plaintiff's treating physician, and by failing to adequately account for plaintiff's moderate limitation in concentration, persistence, and pace. In her objections, plaintiff points to specific portions of the M&R which she contends were in error in addressing her arguments. Upon de novo review, as set forth below, the court determines that the ALJ's "analysis is incomplete and precludes meaningful review" and it is "incumbent on him to provide a clearer explanation of his reasons" for the weight given to the treating physician opinion and in accounting for moderate limitations in concentration, persistence, and pace. Monroe, 826 F.3d at 190-191. Therefore, remand is required.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c); 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. Id. §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. Id. §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not

---

¹ The ALJ noted in footnote the regulatory definitions pertaining to light work and other limitations, in addition to the meaning of work at GED Reasoning Level 03, according to the Dictionary of Occupational Titles.

required to give it "controlling weight." Craig, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id.; see Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence").

Plaintiff's treating physician, Valerie A. Murray, M.D., a psychiatrist who treated plaintiff since January 20, 2010, opined in a January 2013 medical source statement that plaintiff had "extremely limited" abilities in multiple mental functional areas, as well as "extreme" deficiencies (more than "marked") in concentration, persistence or pace. (Tr. 1183). She opined in a July 2014 medical source statement that plaintiff had "extreme loss" in multiple mental functional areas. (Tr. 1443). The ALJ gave "little weight" to these opinions for the following reasons:

> Assaying these medical source statements, Dr. Murray's opinion is given little weight for several reasons. First, a claimant's residual functional capacity is not a medical issue, but is an administrative finding that is reserved to the Commissioner of Social Security. Accordingly, medical opinions expressed in this form can never be given controlling weight or special significance, even if it is given by a treating physician. As noted, the statements are presented in a summary "check the block" with little to no meaningful rationale. The doctor's treatment notes are unremarkable and do not support the opined exceptional functional limitations. Finally, the limitations are so severe that, as the mental medical expert noted, the claimant would have been hospitalized, which is not shown in the medical evidence and was expressly denied by the claimant at the supplemental hearing (20 CFR 404.1527(e) and 416.927(e), SSR 96-2p, 96-5p).

(Tr. 29). Several components of this explanation are not sufficient to enable meaningful review and to determine whether the ALJ provided an accurate and logical bridge from the evidence to the conclusions reached.

As the first reason for giving little weight to the opinion, the ALJ notes that "a claimant's residual functional capacity is not a medical issue, but is an administrative finding that is reserved

6

to the Commissioner," and "[a]ccordingly, medical opinions expressed <u>in this form</u> can never be given controlling weight of special significance, even if it is given by a treating physician." (Tr. 29) (emphasis added). From this explanation, however, it is not clear whether the ALJ viewed the entirety of the medical source statements as opining on issues reserved to the Commissioner, or just that some portions of the statements expressed opinions on issues reserved to the Commissioner. If the former, this is not an accurate description of the medical source statements, because they do not purport to be solely or entirely RFC determinations. (<u>See</u> Tr. 1179-1183; 1439-1445). If the latter, the ALJ has not sufficiently explained what portions of the medical source statements are opinions regarding plaintiff's RFC.

In fact, Dr. Murray expressed opinions in the medical source statements concerning plaintiff's limitations in various functional areas, similar to the mental medical expert, Dr. Davis, who testified at the second ALJ hearing, whose opinions the ALJ gave "significant weight." (Tr. 29). For example, Dr. Murray opined that plaintiff had "extreme" limitations in "concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner" due to her mental disease symptoms. (Tr. 1183). Dr. Davis opined that plaintiff had only "mild" limitations in "concentration, persistence, and pace," and would have no "problems with maintaining attention and concentration for extended periods." (Tr. 63-64). In sum, it is not clear which portions of Dr. Murray's opinion the ALJ discounted as reserved to the Commissioner.

In addition, is not clear whether the ALJ's statement "in this form" is referring to opinions reserved to the Commissioner or the form of document used by Dr. Murray. The sentence immediately following suggests that the ALJ is referring to the form of document, where he states "[a]s noted, the statements are presented in a summary 'check the block' with little to no meaningful

7

rationale." (Tr. 29). While a "check the block" format is a valid reason for discounting an opinion of a treating physician, e.g., 20 C.F.R. § 404.1527(c)(3), it is not a valid basis for never giving it controlling weight as an opinion reserved to the Commissioner. See, e.g., id. § 404.1527(d).

The ALJ also states that Dr. Murray's treatment notes are "unremarkable," but this does not provide enough explanation to enable meaningful review, given that some treatment notes in fact are more than "unremarkable." (Tr. 29). For example, one treatment note dated January 7, 2011, states "she has crying spells"; "easily upset leading to unconscious and uncalled for irritability"; and "Wellbutrin . . . has not effect for her depression." (Tr. 1127). Another appears to state "[s]he has PTSD associated w/ knee trauma . . . she is too traumatized to concentrate on the course . . . depressed . . . can't eat . . . cant' sleep." (Tr. 1125). Another states "[c]lient has increased symptoms of anxiety have been elevated [sic] . . . isolation from others, increased irritability. . . often on the defensive with people she interacts with." (Tr. 1118).[2]

The need for further explanation is compounded when Dr. Murray's opinion is considered in conjunction with other opinions and medical evidence in the record. State agency medical consultant, Patricia McGaffagan, M.A., a licensed psychological associate, examined plaintiff on October 8, 2012, and noted that plaintiff "was unable to understand, retain or follow instructions or sustain attention." (Tr. 1152). She noted that plaintiff did not know her date of birth, day of the week, and stated that the president was Ronald Reagan. (Tr. 1151). The ALJ gave Ms. McGaffagan's opinion "little weight" because plaintiff was reported to have provided "poor effort"

---

[2] The M&R determined that Dr. Murray's treatment notes "do not evidence that [plaintiff] was essentially non-functional, as Dr. Murray concluded in her opinions, and in that respect are 'unremarkable' as characterized by the ALJ." (DE 26 at 10) (emphasis added). The court in its analysis above departs from the reasoning of the M&R because the ALJ independently characterized the treatment notes as "unremarkable" separate from describing them as not supporting exceptional functional limitations. (Tr. 29).

8

during the examination and because "motivational issues were thought to play a significant part in her presentation." (Tr. 29). Nevertheless, Ms. McGaffagan did not opine that plaintiff was malingering, (Tr. 68-69, 1151-52), and Dr. Davis noted that plaintiff's manner of presentation and responses during Ms. Gaffagan's evaluation were a component of her "histrionic or general personality disorder." (Tr. 59). Thus, the ALJ must provide further explanation regarding the weight given to Ms. McGaffagan's opinion, where the ALJ previously determined that plaintiff's personality disorder was a severe impairment (Tr. 17).

The ALJ's explanation for giving "significant weight" to the opinion of Dr. Davis also needs clarification or supplementation, in light of the medical evidence in the record. The ALJ gave significant weight to the opinion of Dr. Davis because of his "longitudinal review of the medical evidence" and because "his opinion is not inconsistent with the medical evidence." (Tr. 29). Dr. Davis testified at hearing that he rated plaintiff with mild limitations in concentration, persistence, and pace, in light of the fact that she has a Master's Degree and "she worked for four years without having any problems." (Tr. 63-64, 69). Both facts, however, relate to a period of time prior to plaintiff's alleged onset of disability, and they do not draw upon evidence in the record that plaintiff subsequently developed psychological symptoms "associated w/ knee trauma" in 2009. (E.g., Tr. 1125). A third basis for Dr. Davis's opinion, plaintiff's pregnancy, was excluded by the ALJ. (Tr. 29. 69). Thus, further explanation is needed concerning why the ALJ gave significant weight to the opinion of Dr. Davis.

In sum, the ALJ fails to provide in his decision an "accurate and logical bridge" between the weight given to medical opinions and the evidence in the record. Monroe, 826 F.3d at 189. In so holding, the court expresses no opinion on the ultimate determination of weight due each opinion,

9

as that is a determination reserved to the Commissioner, but rather expresses only that there are unexplained conflicts in the evidence that require remand.

Finally, the ALJ also failed to explain adequately the RFC component that plaintiff "can perform productive work tasks for up to an average of 95 to 100% of an 8-hour workday," (Tr. 21), given his determination that plaintiff had "moderate difficulties" in concentration, persistence or pace. (Tr. 20). The ALJ states only that "[t]he claimant's moderate limitations in concentration, persistence, and pace, inform the limitations in task complexity and productivity." (Tr. 30). This explanation is conclusory and does not provide a logical basis connecting a "moderate" limitation with an absent or de minimis erosion of functional capacity that has no impact on competitive employment. (See Tr. 99). "Perhaps the ALJ can explain why [plaintiff's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [plaintiff's] residual functional capacity" regarding productivity. Mascio, 780 F.3d at 638. "But because the ALJ here gave no explanation, a remand is in order." Id.[3]

## CONCLUSION

Based on the foregoing, upon careful review of the M&R and the record, the court REJECTS the M&R, GRANTS plaintiff's motion for judgment on the pleadings (DE 19), DENIES defendant's motion for judgment on the pleadings, (DE 22), and REMANDS this matter to defendant, pursuant to sentence four of 42 U.S.C. § 405(g), for further consideration in accordance with this order. The clerk is DIRECTED to close this case.

---

[3] The M&R determined on this issue that "[i]t is the ALJ's duty to formulate the RFC," and "there is no requirement that the RFC mirror the language of a medical source." (DE 26 at 15). While those points are correct, the court departs from the M&R on this issue because the ALJ still must explain the basis for his decision sufficiently to enable meaningful review. Here there is an unexplained conflict between a moderate limitation in concentration, persistence, and pace and the 95-100% productivity RFC assigned by the ALJ.

SO ORDERED this the 21st day of September, 2017.


                                                  _____
                                                  LOUISE W. FLANAGAN
                                                  United States District Judge